[Civ. No. 855.   Fifth Dist.   Feb. 20, 1968.]

COUNTY OF MADERA, Plaintiff and Appellant, v. NEW-
TON C. HOLCOMB, as Director of the Department of
Social Welfare, Defendant and Respondent.

Roy E. Wolfe, County Counsel, for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, and Richard L. Mayers, Deputy Attorney General, for Defendant and Respondent.

STONE, J.—The facts of the original dispute between appellant county and the recipient of aid for needy children have no relevance on this appeal; that is to say, whether the recipient was entitled to aid and how much are not the crux of the appeal. The question is, did the recipient have a right to a hearing; if so, do procedural errors and omissions require a reversal?

Charles Morris was granted aid to needy children on December 8, 1965. He failed to report the amount of his earnings for the month of December, and the Madera County Welfare Department discontinued aid on January 4, 1966. On January 14, 1966, he was reinstated under the same program, but on January 28 the county again terminated his aid for failure to list any employer or any earnings during the previous period.

Morris, as recipient, requested a hearing before the State Department of Social Welfare, to review the county orders terminating aid. A hearing was held on March 17, 1966, before a referee, who submitted to the Director of the Department of Social Welfare of the State of California a proposed decision that Morris "is qualified to receive Aid to Families with Dependent Children—Unemployed."

The director adopted the proposed decision and the county requested a rehearing, which was denied. Thereafter the county filed a petition for writ of mandate in the Superior Court of Madera County, challenging the authority of the Director of the Department of Social Welfare to hold a hearing at the request of a recipient, and challenging the evidentiary sufficiency of the decision of the referee as adopted by the director.

A hearing was held in the superior court, pursuant to Code of Civil Procedure, section 1094.5. The county, objecting to

the sufficiency of the record transcribed from a tape recording made during the referee's hearing, sought permission to introduce evidence to supplement the record. The trial court found the record to be adequate and the evidence therein sufficient to support the decision, and denied appellant's petition for a writ of mandate.

The county's primary contention is that Morris was not entitled to a hearing because he was receiving aid under part 3 of division 9 of the Welfare and Institutions Code, and only part 2 provides that a recipient may demand a hearing. Appellant's contention is that division 9 is not to be viewed as an integrated act with each of its eight parts construed in the light of all the others, but that each part constitutes an independent legislative enactment. Appellant argues with some vigor that part 3 is concerned with the rehabilitation of those receiving aid to needy children, a program the county is in a better position to direct than is the state.

It is unnecessary to consider the merits of this argument since it appears clear to us that the Legislature intended division 9 to provide the framework of a comprehensive state-administered plan of public assistance.

The legislative history of division 9 of the Welfare and Institutions Code, entitled "Public Social Services," reveals that the Legislature gave it being by a single enactment, chapter 1784 of Statutes of 1965. It is a re-enactment of the substance of previously existing sections of the Welfare and Institutions Code and, in part, new material. The introductory paragraph, Welfare and Institutions Code, section 10000, expresses a legislative intent that the entire division be interpreted as an integrated act, since it reads, in part: "The purpose of this *division* is to provide for protection, care, and assistance to the people of the state in need thereof, and to promote the welfare and happiness of all of the people of the state by providing appropriate aid and services to all of its needy and distressed. . . ." (Italics added.)

. Moreover, the format of division 9 reflects an integrated system for administering social services. The title "Public Social Services," encompasses all of the separate parts of division 9, which are designated as follows: part 1, Definitions and General Provisions; part 2, Administration; part 3, Aid and Medical Assistance; part 4, Institutions and Other Facilities for the Care of Children and Aged Persons; part 5, County Aid and Relief to Indigents; part 6, Miscellaneous Provisions; part 7, Basic Health Care; part 8, Extended Health Services.

It is significant that no public assistance is provided for in parts 1 and 2, which define the administrative procedures for all of division 9; they are largely meaningless unless applied to the other parts of the division which delineate the different kinds of public assistance. For example, a recipient's right to a fair hearing in part 2 is left hanging in mid-air unless applied to the public aid sections. Conversely, if parts 2 and 3 are not construed together, there is no way in which a hearing can be had by a recipient who is denied aid or as to whom aid is terminated. Only part 2 contains such a provision; but appellant finds nothing objectionable about this, indeed it postures its case upon this circumstance by contending that since there is no provision in part 3 for a recipient to demand a hearing, the director erred in acceding to Morris' request for a hearing, from which it follows the hearing was a nullity. Appellant arrives at this conclusion from the fact that section 11209[1] of part 3 places the responsibility for administering aid to families with dependent children on the county, to be exercised according to rules and regulations laid down by the department, and only section 11458 of part 3 provides for a review of the county's administration of such aid.[2] This review can be requested by the department alone.

Appellant argues there is really no procedural hiatus in part 3 because the department can enforce adherence to its rules by implementing the last paragraph of section 11209, which provides that if a county refuses to comply with department rules and regulations, the department shall cut off all further aid under the chapter until the county has complied.

It seems incredible to ascribe to the Legislature an intent that rules and regulations governing aid to needy children

---

[1]Welfare and Institutions Code, section 11209, reads, in part: "The department shall: (a) make rules and regulations for the proper maintenance and care of needy children; (b) make rules and regulations for the administration of aid to families with dependent children. Such rules and regulations shall be binding upon the institutions and counties.

"The department may inquire at any time into the management of any institution receiving aid under the provisions of this chapter or into the management by any county of aid to families with dependent children."

[2]Welfare and Institutions Code, section 11458 reads: "The county may cancel, suspend or revoke aid under this chapter for cause. Upon instructions from the department, the county shall cancel, suspend or revoke aid under this chapter.

"Upon request of the department, an immediate report of every suspension of aid shall be made to the department stating the reason for the suspension and showing the action of the county in approving the suspension."

can be enforced by the department only by cutting off all state funds, and thus penalize all recipients in the entire county, simply because the county is in dispute with a single recipient; nor do we believe it was the intent of the Legislature to deny the one recipient the right to seek a hearing on his own initiative, as provided by section 10950 of part 2.

■ Appellant concedes, of course, that the county's rehabilitation program is supported by funds furnished through the state. This fact relates the program to section 10950, part 2, since the section, after delineating the person to be accorded a fair hearing, concludes thus: "As used in this chapter, 'recipient' means an applicant for or recipient of aid or services except or services exclusively financed by county funds."

It seems clear from this language that the only exception to a recipient's right to demand a hearing under section 10950 is a person receiving "public social services" financed exclusively by county funds. (*County of Los Angeles* v. *Department of Social Welfare*, 41 Cal.2d 455, 458 [260 P.2d 41].)

■ Turning, now, to the procedural questions raised by appellant, it is asserted that the trial court erred by not permitting the county to introduce additional evidence at the hearing, pursuant to Code of Civil Procedure section 1094.5. Appellant concedes there is no constitutional question or vested right at issue that would justify a trial de novo (*County of Contra Costa* v. *Social Welfare Board*, 199 Cal. App.2d 468 [18 Cal.Rptr. 573]); rather, appellant asserts that because the record of the hearing before the referee was defective it is entitled to a new hearing before the referee, or the right to introduce additional evidence at the review by the superior court.

The record was admitted in evidence by stipulation, and it must be owned that it leaves much to be desired. The difficulty stems from the fact that the hearing was reported by a recording device. Two kinds of imperfections appear, both resulting from the informal manner in which the hearing was conducted. Some of the speakers failed to identify themselves, and at times more than one person spoke at the same time. As might be expected, such "jamming" caused small portions of the tape to be "unintelligible" and they are labeled by the transcribers as "inaudible." However, Welfare and Institutions Code, section 10956 provides that the hearing "shall be reported by a phonographic reporter or otherwise perpetuated by mechanical, electronic, or other means capable of reproduc-

tion or transcription.'' Since this sort of recording is permissible, and since the record was received by stipulation, we cannot find that the court erred unless it be demonstrated that the discrepancies cannot be removed and the record made clear by reference to the transcript.

The trial court, and this reviewing court, must rely upon the record prepared and forwarded by the department in accordance with Welfare and Institutions Code, sections 10953-10962. The trial court found the record sufficient, apparently identifying the anonymous speakers from their remarks and from statements that preceded and followed the remarks. By the same method, reference to subject matter before and after, remarks become intelligible despite the untranscribed words. When the record is viewed in its entirety, and anonymous statements are viewed in context, we cannot say that the record was unintelligible to the extent that the holding of the trial court must be reversed.

Finally, appellant asks us to reverse upon the ground the department failed to provide a record of the hearing in the time required by statute. The delay was considerable, and we can understand the perturbation of appellant's counsel at the director's violation of the time limits specified in the code. However, we deem this time limit directory, not jurisdictional. In any event, the recipient, the real party in interest, should not lose his right to a review after a hearing before a referee (Welf. & Inst. Code, § 10950) because of the director's neglect of duty.

The judgment is affirmed.

Conley, P. J., and Gargano, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 17, 1968.