[Civ. No. 32709. First Dist., Div. Four. Jan. 7, 1974.]

GENEVA HENDERLING, Plaintiff and Appellant, v.
ROBERT B. CARLESON, as Director, etc., Defendant and Respondent.

## COUNSEL

Armando M. Menocal III and Christopher N. May for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, David J. Bowie and Sheridan H. Brown, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**CHRISTIAN, J.**—Geneva Henderling sought from the superior court a writ of mandate to compel Robert B. Carleson, Director of the State Department of Social Welfare, to set aside his order denying welfare assistance to appellant. The writ was denied, and the present appeal followed. We hold that the writ should have been granted.

On November 21, 1969, appellant applied for assistance under one of the federally assisted welfare programs, Aid to the Needy Disabled. (See 42 U.S.C. § 1351 et seq.; Welf. & Inst. Code, §§ 13500-13801.) Under the program, assistance is given to persons who are permanently impaired and totally disabled. (Welf. & Inst. Code, § 13501.)[1] The Department of Social Services of San Francisco denied her application on June 22, 1970, and on August 12, 1970, appellant made a request for a "fair hearing" under section 10950 et seq. The hearing was held on October 7, 1970, before a referee employed by the department; the referee rendered a proposed decision on November 16, 1970, finding appellant eligible for benefits.

The facts recited in the referee's proposed decision are summarized as follows. Appellant, 36 years old at the time of the hearing, claimed her disabilities prevented her from obtaining and holding gainful employment. These disabilities included pain and numbness of her fingers and hands, uncontrolled diabetes, anxiety, poor equilibrium, and poor eyesight. Educated through the twelfth grade, appellant had worked as a key punch

---

[1]Except where otherwise indicated, all statutory references herein are to the Welfare and Institutions Code. The Aid to the Needy Disabled program is one of several public social services administered by counties pursuant to division 9 of the code (commencing with § 10000) with grants-in-aid funded in part by the federal government, received by counties from the state, and expended subject to regulations adopted by the Director of the State Department of Social Welfare. (See, e.g., §§ 10000-10001, 10550-10555, 10600, 10604, 10800, 13505.)

operator, barber, and repairer of shaving equipment. Her most recent employment terminated in December 1969 as a result of illness.

Five doctors and one rehabilitation counselor submitted reports describing appellant's condition. The evidence presented a picture of real difficulty on the part of appellant; for reasons which will appear, we need not review the evidence in detail.

In January 1971, the referee submitted to the director a proposed decision finding appellant eligible for assistance. Although section 10959 directs the director to act on a referee's proposed decision within 30 days after receiving a copy of the decision, he failed to do so. Appellant repeatedly requested the director to act, and on April 12, 1972, sought mandamus to compel the director to render a decision. The director finally issued a decision on April 18, 1972, after the court had issued an alternative writ of mandate.

The director adopted the referee's findings of fact, but he concluded that appellant's impairments were not total and permanent and did not prevent her from working. The present mandamus proceeding challenges the director's decision.

Reference to the statutes governing hearings and review in welfare cases will set a context for consideration of appellant's contentions. (See §§ 10950-10965.) If an applicant for public assistance is dissatisfied with a grant determination made by a county agency, he may request a "fair hearing" before the State Department of Social Welfare (SDSW). (§ 10950.) The SDSW must set the hearing to commence within 45 days of the request. (§ 10952.) Hearings are conducted by the director, the administrative advisor of SDSW "in behalf of the director," or by referees employed by the department. (§ 10953.) If a referee conducts a hearing, he must prepare a written proposed decision, obtain the approval of the chief referee of SDSW, and submit the decision to the director within 75 days after the conclusion of the hearing. (§ 10958.)

Within 30 days after receiving a copy of the referee's proposed decision, the director may adopt the decision in its entirety, decide the matter himself, or order a rehearing. (§ 10959.) Judicial review of a director's final decision may be had by writ of mandate. (§ 10962.)

If the maximum allowable time were to be used at each step, 150 days would elapse between a request for hearing and the director's decision, unless the director orders a rehearing. (§ 10952 [45 days]; § 10958 [75 days]; § 10959 [30 days].) However, final administrative action is required

by other provisions of law to be taken "within 60 days[2] from the date of a request for a fair hearing." (45 C.F.R. (1972) § 205.10, subd. (a)(11); *King* v. *Martin* (1971) 21 Cal.App.3d 791 [98 Cal.Rptr. 711]; SDSW, Public Social Services Manual, § 22-056.1.)

Within the allowed total period of 150 days section 10959 requires the director, "Within 30 days after receiving a copy of the referee's proposed decision [to] adopt the decision in its entirety; decide the matter himself on the record, including the transcript, with or without taking additional evidence; or order a rehearing to be conducted by himself, the administrative adviser of the department or another referee in behalf of the director." A preliminary question is whether this time limit is mandatory or directory.

Respondent cites *County of Madera* v. *Holcomb* (1968) 259 Cal.App. 2d 226 [66 Cal.Rptr. 428]. But the *Holcomb* decision does not support the assertion that the time limit in section 10959 is merely directory. *Holcomb* expressed the conclusion that the recipient, who was the real party in interest although not a party to the suit, should not lose his right to review after a hearing because of official neglect to provide a record within the prescribed time.

We must analyze section 10959 in its statutory context to determine whether its 30-day time limit is mandatory or directory. (See *King* v. *Martin, supra,* 21 Cal.App.3d 791.) Division 9 of the Welfare and Institutions Code, when read as a whole, points toward the conclusion that the time limit is mandatory. Section 11000 states that "[t]he provisions of law relating to a public assistance program shall be liberally construed to effect the stated objects and purposes of the program." This rule of liberal construction applies to all parts of division 9. (See *Rosas* v. *Montgomery* (1970) 10 Cal.App.3d 77, 88-89 [88 Cal.Rptr. 907, 43 A.L.R.3d 537] [rule of liberal construction applied to div. 9, pt. 1, § 10001]; cf. *County of Madera* v. *Holcomb, supra,* 259 Cal.App.2d 226, 228 [division 9 should be read as an integrated act].) A principal purpose of the welfare program established by division 9 is to provide prompt services and benefits to those who are eligible. (§§ 10000, 10001, subd. (b), 11004.) Section 10959 reflects a legislative desire to provide timely relief for persons who request fair hearings. ■ A statute should not be read as directory if such an

---

[2]The 60-day time limit in 45 C.F.R. (1972) section 205.10, subdivision (a)(11) has been changed to 90 days in 45 C.F.R. (1973) section 205.10, subdivision (a)(16), effective October 15, 1973 (38 Fed. Reg. No. 157 (1973) 22005, 22008). If the Public Social Services Manual is amended to coincide with the new 90-day limit, the SDSW would have 90 days to achieve final administrative action on a fair hearing. (Cf. *King* v. *Martin, supra,* 21 Cal.App.3d 791, 794-795.)

interpretation would render the statute ineffective. (See, e.g., *King* v. *Martin, supra,* 21 Cal.App.3d 791.) If the 30-day limit in section 10959 is read as directory, the statute would be ineffective to insure prompt action by the director. We conclude that the time limit is mandatory.

Appellant asserts that the director lost his authority to act under section 10959 by not rendering a decision within 30 days and that he must therefore adopt the referee's decision, which was favorable to appellant. ■ But an inclusive examination of part 2 of division 9 shows that the Legislature intended the director (not a referee) to issue the final decision on a fair hearing. Section 10958 requires the referee to file a "proposed" decision with the director; section 10959 allows the director to adopt the referee's decision or make his own decision. The legislative scheme for a final decision after a fair hearing, the reference to a referee's proposed decision (§§ 10958, 10959, 10960), and the reference to the director's decision as the final decision (§§ 10960-10963) all support the conclusion that the director (not the referee) must issue the final decision, whether or not he has complied with the 30-day limit in section 10959.

Appellant argues that equitable estoppel independently compels the proposed decision of the referee to be considered the final decision in this case since the director waited for approximately 17 months before acting. A party may indeed be estopped if his act or omission led another into a change of position. (Cf. *Farrell* v. *County of Placer* (1944) 23 Cal.2d 624, 628 [145 P.2d 570, 153 A.L.R. 323].) But the director's inactivity, although not excused, has not been shown to have induced appellant to rely upon anything done by the director.

Appellant contends that the decision of the director is invalid because the decision was not, in the words of section 10959, based "on the record, *including the transcript.*" (Italics added.) It is conceded by respondent that the "fair hearing" testimony was recorded electronically rather than by a phonographic reporter. It is also conceded that the electronic record was not translated into typescript until after the director had issued his decision. The electronic tape of the "fair hearing" testimony was transmitted to the director with the case file, but our record is silent as to whether the director actually listened to the tape recording of appellant's hearing. ■ Where the record is silent, we can appropriately presume official duty was performed. (Evid. Code, § 664.)

The question remains whether it is unlawful to use an audible electronic record rather than a paper transcript. It is true that the word "transcript"

normally connotes "a written or printed copy" (Webster's Third New Internat. Dict. [unabridged ed. 1961]). ■ But section 10956 seems explicitly to contemplate another, less expensive and more expeditious method of access to the record of proceedings, in providing for reporting "by a phonographic reporter or otherwise perpetuated by mechanical, electronic, or other means capable of *reproduction or transcription*" (italics added). The language equating "reproduction" with "transcription" and the earlier language expressly sanctioning the use of an electronic record, would be nullified if section 10959 were read as compelling the preparation of a *paper* transcript as opposed to another accurate method of access to testimony by the decision-maker. We are mindful also of our own experience, as a reviewing court, in the delays which commonly attend the preparation of reporters' transcripts. That experience suggests that the Legislature is unlikely to have intended to mandate the use of paper transcripts in proceedings which are, by other provisions, required to be expeditious.

Appellant also complains that the director did not specify the reasons for his decision or identify the evidence relied on by him. In *Rogers* v. *Carleson* (1973) 30 Cal.App.3d 54 [106 Cal.Rptr. 140] it was held that decisions substantially identical to that in question here were defective because the decisions failed to specify reasons and identify the supporting evidence, as required by federal and state law. (45 C.F.R., *supra*, § 205.10, subd. (a)(15); SDSW, Public Social Services Manual, § 22-059.2. See generally *Rogers* v. *Carleson, supra,* at pp. 57-58.) ■ The director's decision in the present case must be annulled and the case remanded to the director for further proceedings.

Appellant also contends that the director's decision is contrary to the evidence. Since review of a decision by the director is limited to questions of law (§ 10962), a trial court's function in considering the evidence is limited to determining whether the director's findings are supported by substantial evidence in light of the whole record. (Code Civ. Proc., § 1094.5; *County of Contra Costa* v. *Social Welfare Board* (1962) 199 Cal.App.2d 468, 473 [18 Cal.Rptr. 573].) ■ The role of the trial court and of the appellate court begins and ends with a determination of whether substantial evidence, contradicted or uncontradicted, supports the conclusion of the director. (*Thompson* v. *City of Long Beach* (1953) 41 Cal.2d 235, 239-241 [259 P.2d 649]; *Neely* v. *California State Personnel Bd.* (1965) 237 Cal.App.2d 487, 489 [47 Cal.Rptr. 64].)

Since the director's decision failed to specify the reasons for and the evidence supporting his decision, we do not reach in this appeal the question whether the decision was supported by substantial evidence. (See *Rogers* v. *Carleson, supra,* 30 Cal.App.3d 54, 63.)

The judgment is reversed with directions to issue a writ annulling the decision of respondent and requiring respondent to reconsider appellant's case and issue a new decision within 30 days in accordance with the views expressed in this opinion.

Devine, Acting P. J.,* and Rattigan, J., concurred.

A petition for a rehearing was denied February 5, 1974, and appellant's petition for a hearing by the Supreme Court was denied March 8, 1974. Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.